1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

9
10
11

DANIEL MORA MENDOZA,

Petitioner,

v.

W.J. SULLIVAN, Warden,

Respondent.

Case No. 8:19-cv-00622-MAA

**MEMORANDUM DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

12
13
14
15
16
17
18
19

## I.    INTRODUCTION

20        On April 2, 2019, the Court received and filed Petitioner Daniel Mora
21 Mendoza's ("Petitioner") *pro se* Petition for Writ of Habeas Corpus by a Person in
22 State Custody pursuant to 28 U.S.C. § 2254 ("Petition").  (Pet., ECF No. 1.)  The
23 Petition challenges a 2017 judgment of conviction Petitioner sustained in the
24 Orange County Superior Court.  (*Id.* at 2.)[1]  On May 14, 2019, Respondent W.J.
25

---

26 [1] Pinpoint citations of briefs, exhibits, and Lodged Documents ("LD") in this Order
refer to the page numbers appearing in the ECF-generated headers.  Pinpoint
27 citations of the Reporter's Transcript ("RT," ECF Nos. 8-1 to 8-3) and Clerk's
Transcript ("CT," ECF No. 8-4) refer to the transcripts' own volume- and page-
28 numbering schemes.

Sullivan ("Respondent") filed an Answer and an attached Memorandum of Points and Authorities ("Answer MP&A").  (Answer, ECF No. 7; Answer MP&A, ECF No. 7-1.)  Petitioner did not file a Reply.  The matter now is ready for decision.

Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a United States Magistrate Judge.  For the reasons stated below, the Court denies the Petition and dismisses this action with prejudice.

## II.    PROCEDURAL SUMMARY

In 2017, an Orange County Superior Court jury convicted Petitioner of second-degree robbery (Cal. Penal Code §§ 211 and 212.5) (Count One) and petty theft (Cal. Penal Code §§ 484(a) and 488) (Count Two).  (CT 183–84; 3 RT, ECF No. 8-3, at 307–08.)  The court sentenced Petitioner to state prison for a total term of three years.  (CT 189–90; 3 RT 316–17.)

Petitioner appealed his judgment of conviction to the California Court of Appeal.  (*See* LD 3, ECF No. 8-5.)  The Court of Appeal issued a reasoned decision denying Petitioner's appeal and affirming the judgment.  *People v. Mendoza*, No. G055457, 2018 Cal. App. Unpub. LEXIS 8408 (Cal. Ct. App. Dec. 13, 2018).  (LD 6, ECF No. 8-8.)  Petitioner filed a petition for review with the California Supreme Court (LD 7, ECF No. 8-9), which denied review without discussion or citation of authority, *People v. Mendoza*, No. S253042, 2019 Cal. LEXIS 1228 (Cal. Feb. 20, 2019) (LD 8, ECF No. 8-10).

The Court received and filed the Petition on April 2, 2019.  Respondent filed the Answer on May 14, 2019.  Petitioner did not file a Reply.

## III.    FACTUAL SUMMARY

Pursuant to 28 U.S.C. § 2254(e)(1), a factual summary from a state appellate court's opinion is entitled to a presumption of correctness that may be rebutted only by clear and convincing evidence that the facts were otherwise.  *See Hedlund v.*

2

*Ryan*, 854 F.3d 557, 563 (9th Cir. 2017).  Petitioner does not challenge the following summary of the evidence presented at trial as described in the California Court of Appeal's decision of Petitioner's direct appeal[2]:

> On April 16, 2017, Amanda Rodriguez was working as a greeter at a grocery store in Anaheim.  Rodriguez saw a man, later identified as [Petitioner], bypass the cash registers and exit the store holding a clear bag containing several food items.  Rodriguez followed [Petitioner] to the parking lot and asked if he had a receipt.  Rodriguez responded "No, bitch.  I don't have a receipt.  I'm hungry[3]" in a loud tone.
>
> Rodriguez reached to take the bag from [Petitioner].  In response, [Petitioner] "smacked" Rodriguez's hand.  Rodriguez told [Petitioner] she was going to call the authorities, to which he replied, "I don't care" and left.
>
> Rodriguez called the police from the parking lot.  She told the dispatcher a man had tried to assault her after stealing food items.  Rodriguez gave police the make, model, and license plate number of the man's vehicle.  Anaheim police identified [Petitioner] using his license plate number.  Rodriguez identified [Petitioner] out of a six-pack photographic line-up.

*Mendoza*, 2018 Cal. App. Unpub. LEXIS 8408, at *1–2 (footnote renumbered).  (LD 6 at 2.)

///

---

[2] Petitioner did not challenge his petty theft conviction (Count Two)—which stemmed from a separate incident—on appeal, and thus the California Court of Appeal did not include a factual summary for that offense.  Petitioner also does not challenge his petty theft conviction in these habeas proceedings.  (*See* Pet.)

[3] At trial, the "I'm hungry" portion of [Petitioner's] response was omitted pursuant to the court's pretrial rulings.

## IV.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254(d) ("Section 2254(d)"), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim—(1) resulted in
> a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or (2) resulted in a decision that
> was based on an unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

Under AEDPA, the "clearly established Federal law" that controls federal habeas review of state-court decisions consists of the holdings, as opposed to the dicta, of Supreme Court decisions "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

Although a state-court decision may be both "contrary to" and "an unreasonable application of" controlling Supreme Court law, the two phrases have distinct meanings. *See id.* at 391, 412–13. A state-court decision is "contrary to" clearly established federal law if the decision either applies a rule that contradicts binding governing Supreme Court law or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam); *see also Woods v. Donald*, 575 U.S. 312, 317 (2015) ("[I]f the circumstances of a case are only 'similar to' our precedents, then the state court's decision is not 'contrary to' the holdings in those cases.") . When a state-court decision adjudicating a claim is contrary to controlling Supreme Court law, the reviewing federal habeas court is "unconstrained by § 2254(d)(1)." *See Williams*, 529 U.S. at 406.

1 State-court decisions that are not "contrary to" Supreme Court law may be

2 set aside on federal habeas review "only if they are not merely erroneous, but 'an

3 *unreasonable* application' of clearly established federal law, or based on 'an

4 *unreasonable* determination of the facts.'" *Packer*, 537 U.S. at 11 (quoting Section

5 2254(d)) (emphasis in original). A state-court decision that correctly identifies the

6 governing legal rule may be rejected if it unreasonably applies the rule to the facts

7 of a particular case. *See Williams*, 529 U.S. at 406 (providing, as an example, that a

8 decision may state the *Strickland* standard correctly but apply it unreasonably).

9 However, to obtain federal habeas relief for such an "unreasonable application," a

10 petitioner must show that the state court's application of Supreme Court law was

11 "objectively unreasonable." *Woodford v. Viscotti*, 537 U.S. 19, 27 (2002) (per

12 curiam). An objectively unreasonable application is "not merely wrong; even 'clear

13 error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting

14 *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)). Instead, "a state prisoner must

15 show that the state court's ruling on the claim being presented in federal court was

16 so lacking in justification that there was an error well understood and

17 comprehended in existing law beyond any possibility for fairminded disagreement."

18 *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The same standard of objective

19 unreasonableness applies where the petitioner is challenging the state court's

20 factual findings pursuant to Section 2254(d)(2). *See Miller-El v. Cockrell*, 537 U.S.

21 322, 340 (2003) ("[A] decision adjudicated on the merits in a state court and based

22 on a factual determination will not be overturned on factual grounds unless

23 objectively unreasonable in light of the evidence presented in the state-court

24 proceeding . . . .").

25 In this case, as to both of the grounds raised in the instant Petition, the

26 California Court of Appeal rejected Petitioner's claims on the merits in a reasoned

27 decision. *Mendoza*, 2018 Cal. App. Unpub. LEXIS 8408. (LD 6.) The California

28 Supreme Court summarily denied review. *Mendoza*, 2019 Cal. LEXIS 1228. (LD

8.)  Therefore, for the purpose of AEDPA review, the California Court of Appeal's denial of Petitioner's claims is the relevant state-court adjudication.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (where state supreme court decision is unexplained, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning"); *see also Anderson v. Gipson*, 902 F.3d 1126, 1131 (9th Cir. 2018) (where the California Supreme Court denies a petition for discretionary review of a direct appeal decision without comment, AEDPA review "focuses on the California Court of Appeal's reasoning in denying relief").

## V.    DISCUSSION

Petitioner asserts two grounds for relief:

1.      The trial court violated Petitioner's due process rights by excluding Petitioner's "I'm hungry" statement.

2.      The trial court's jury instruction on the "force or fear" element of second-degree robbery violated Petitioner's due process rights because it was duplicative, argumentative, and confusing.

(*See* Pet. 5, 15, 18–33.)[4]  The Court considers each of these grounds and concludes that Petitioner is not entitled to federal habeas relief.  Consequently, the Petition is denied.

///

///

///

---

[4] Petitioner's release from prison does not moot the instant habeas claims, which challenge Petitioner's underlying conviction, because collateral consequences of the conviction are presumed to exist and to be remediable with a favorable habeas judgment.  *See Wilson v. Terhune*, 319 F.3d 477, 479–80 (9th Cir. 2003).

1

**A.     Ground One**

2          In Ground One, Petitioner claims that the trial court abused its discretion and

3    violated his federal due process rights when it excluded the "I'm hungry" portion of

4    his statement to Ms. Rodriguez.  (Pet. 5, 15, 18–29.)  Incorporating the arguments

5    that he raised in his counseled petition for review to the California Supreme Court,

6    Petitioner argues that this statement should have been admitted pursuant to the "rule

7    of completeness"—codified at California Evidence Code section 356—because it

8    was relevant and necessary to understand the admitted portion of Petitioner's

9    statement, and that its probative value was not substantially outweighed by its

10   prejudicial impact on the prosecution under California Evidence Code section 352.

11   (*Id.* at 18–27.)  Petitioner further argues that this error caused him prejudice

12   because it implicated his due process right to a fair trial and there was a reasonable

13   possibility that the jury would have convicted him of the lesser-included offense of

14   petty theft, rather than second-degree robbery, if the "I'm hungry" statement had

15   been admitted.  (*Id.* at 27–29.)

16          In the Answer, Respondent argues that the exclusion of this statement under

17   state evidentiary rules did not violate Petitioner's federal constitutional rights

18   because the state courts reasonably determined that the statement was not relevant,

19   as it did not negate any elements of second-degree robbery or support an

20   affirmative defense to this crime.  (Answer MP&A 12–15.)

21

22                    1.    Legal Standard

23          A state court's evidentiary errors are not cognizable on federal habeas review

24   without a showing that the errors violated federal law.  *See Estelle v. McGuire*, 502

25   U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus

26   relief does not lie for errors of state law."  (internal quotation marks and citations

27   omitted); *Rhoades v. Henry*, 638 F.3d 1027, 1034 n.5 (9th Cir. 2011)

28

("[E]videntiary rulings based on state law cannot form an independent basis for habeas relief.").

A defendant generally has a due process right to meaningfully present a complete defense. *See Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *see also Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." (internal quotation marks and citations omitted)). Nevertheless, the right to introduce evidence is subject to reasonable restrictions, such as evidentiary and procedural rules, to accommodate other legitimate interests in the criminal trial process. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Moses v. Payne*, 555 F.3d 742, 757 (9th Cir. 2009). "[T]he Constitution leaves to the judges who must make [decisions concerning the admissibility of evidence] 'wide latitude' to exclude evidence that is 'repetitive . . . , only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" *Crane v. Kentucky*, 476 U.S. 683, 689–90 (1986) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). "Only rarely" has the Supreme Court "held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (per curiam).

2.   Background

When the victim, Ms. Rodriguez, confronted Petitioner and asked Petitioner if he had a receipt, Petitioner stated, "No, bitch. I don't have one. I'm hungry." (*See* 1 RT, ECF No. 8-1, at 13 (Sept. 12, 2017 Tr.).) At a pre-trial hearing, the prosecutor, Assistant District Attorney Scott Wooldridge, moved to exclude the "I'm hungry" portion of Petitioner's statement. (*Id.* at 13–16.) The following

8

1  exchange between the trial court, Mr. Woolridge, and Petitioner's defense attorney,

2  Deputy Public Defender Olga Giller, then occurred:

3      **The Court:** Now, the man walking out of the store said, "Get out of

4      my way. I am hungry." And the "get out of my way" is fine, but the

5      "I am hungry" is not." Anything you want to add, Mr. Woolridge?

6      **Mr. Wooldridge:** That is correct. He makes three small statements

7      to the alleged victim. "No, bitch. I don't have one. I'm hungry."

8          We are only seeking to exclude the "I am hungry" part. I don't

9      think that's relevant and that has a tendency, I think, to evoke some

10     feelings of either sympathy or issues that aren't actually relevant to

11     the elements. So we are seeking to exclude just that phrase, "I'm

12     hungry."

13     **The Court:** Ms. Giller.

14     **Ms. Giller:** Well, your Honor, you kind of can't pick and choose

15     what parts of statements you want to keep by determining whether or

16     not you like it. So, I mean, under 356, I think that, you know, for the

17     rule of completeness, it is one statement.

18         And just because, you know, the People believe that "I am

19     hungry" might create some kind of sympathy, it is giving the context

20     from the actual statement and for what is being done and why. And I

21     think cutting that part off is unduly prejudicial to my client and to our

22     defense.

23         So I would absolutely object to that being removed and that

24     being excluded or sanitized because it is extremely prejudicial. And

25     under 356, it is a complete statement. You can't just pick and choose

26     what parts of the statement you want to remove because it is going to

27     help your case.

28 ///

**The Court:**  Tell me again, Ms. Giller, on your question about prejudice, either prejudice to your side or prejudice to the prosecution. What would this effect be here?

**Ms. Giller:**  Well, it is the context for the actual statement.  So when you look at the actual police report and she tells the officer—you know, when they say, "What did he say," okay, that is the actual entire statement.  Right?

"No, Bitch.  I don't have one.  I'm hungry."

All right.  That gives context as to why he does not have the receipt or why he took the items.  I mean, it is a robbery, but it is not just a—it is not a standard robbery.  It is an Estes robbery where you take items from a store, and the items in question here are food.[5]

The actual items that are taken are food.  So maybe if he was taking a car battery and somebody said, "Hey, I am hungry," then I can understand it might not be relevant or make sense.  But, actually, he took food.  So that explains why he would be taking the food.

Now, I understand why the People don't want that statement in there.  But that's not the—that's not a reason for why this statement—that part of the statement should actually be removed.

**The Court:**  Mr. Wooldridge, you get the final word.

**Mr. Wooldridge:**  Yeah, two points.  For one, "I am hungry" is not a defense to the crime of theft.  Just because he is hungry and because he is stealing food, that's not a defense.  There is no probative value to that statement.  A theft is a theft whether he is hungry or not.

///

---

[5] An "Estes" robbery refers to a specific type of robbery in which a shoplifter uses force or intimidation to prevent a store employee from regaining possession of the stolen merchandise.  *See People v. Estes*, 147 Cal. App. 3d 23 (Cal. Ct. App. 1983).

1  **The Court:** Perhaps from your point of view, tends to prove that he

2  did the deed?

3  **Mr. Wooldridge**: Potentially, yeah.

4  **The Court:** You don't want that?

5  **Mr. Wooldridge:** I don't want that.

6    The rule of completeness indicates that, yes, even said

7  surrounding admissible statements can come in.  If they are being

8  used to explain those that are being admitted.

9    The statement, "No, bitch.  I don't have one" is in relation to

10  his receipt, whether or not he has a receipt.  The initial statement of "I

11  am hungry" doesn't explain whether or not he has a receipt or not.  It

12  doesn't go to that statement.  It is a different statement on a different

13  subject matter that is not related.

14    So I don't believe it falls under the rule of completeness

15  doctrine.

16  **The Court:** Motion is granted.

17 (1 RT 13–16.)

18  On the first day of the trial, before Ms. Rodriguez testified, Petitioner's lawyer

19 asked the trial court to reconsider its ruling:

20  **Ms. Giller:** And I wanted to just ask the Court to reconsider its

21  decision for the following reasons:

22    I see the term "I'm hungry," or those two words, not as being

23  brought in for the truth but actually going to my client's state of mind.

24    As the Court knows, my defense in this case is that a robbery

25  has not been committed and there was a petty theft.  So, actually, my

26  defense is that my client committed a petty theft, and the statement

27  goes to his intent, which is an element of the petty theft.

28 *///*

1    So if the Court denies the admission of that part of the
2    statement, it will be denying my defense.

3    There really is absolutely no reason for that second part of the
4    statement, "I'm hungry," to be redacted.  It gives context.  [Section]
5    356 is very clear on the fact that you have to include the entire
6    statement if we're going to include a portion.

7    And the fact that the People believe that this is just going to be
8    bad for their case or they think it's going to engender sympathy to my
9    client is not really a reason to redact that part of the statement.  There
10   is just absolutely no legal reason to redact this part of the statement,
11   except for the fact that it makes their case stronger.

12   **The Court:**  What did you say that we didn't hear yesterday?

13   **Ms. Giller:**  I wasn't sure if I articulated it in this fashion.  So I just
14   wanted to make sure that that was articulated.  I just think that if—
15   again, I guess I'm asking the Court to state why it would redact this.

16   **The Court:**  Mr. Wooldridge, anything you want to add to the
17   discussion?

18   **Mr. Wooldridge:**  It is not relevant to the defense of robbery and it's
19   confusing, misleading.  It evokes feelings of sympathy in the jury that
20   maybe he's stealing because he's homeless or cannot afford food,
21   which are not defenses to robbery or theft, either one.

22   **The Court:**  Your motion number three was and is granted as sought
23   for the reasons given.

24   (2 RT, ECF No. 8-2, at 44–46 (Sept. 13, 2017 Tr.).)

25   On direct appeal, Petitioner argued that the trial court abused its discretion
26   and violated Petitioner's state and federal due process rights by excluding the "I'm
27   hungry" statement.  (LD 3 at 13–27.)

28

12

The Court of Appeal rejected Petitioner's claim and affirmed the trial court's decision, reasoning as follows:

> [Petitioner] first contends the trial court abused its discretion by excluding the "I'm hungry" portion of his statement to Rodriguez. We review a trial court's exclusion of evidence under sections 356 and 352 for abuse of discretion. (*People v. Parrish* (2007) 152 Cal.App.4th 263, 274, 60 Cal. Rptr. 3d 868; *People v. Moore* (2016) 6 Cal.App.5th 73, 91, 210 Cal. Rptr. 3d 769.)
>
> Section 356, "sometimes referred to as the statutory version of the common law rule of completeness" (*People v. Parrish, supra*, 152 Cal.App.4th at p. 269, fn. 3), provides as follows:  "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence" (§ 356.)
>
> The purpose of section 356 "is to prevent the use of selected aspects of a conversation, act, declaration, or writing, so as to create a misleading impression on the subjects addressed." (*People v. Arias* (1996) 13 Cal.4th 92, 156, 51 Cal. Rptr. 2d 770, 913 P.2d 980.)  "The rule stated in [s]ection 356," however, "only makes admissible such parts of an act, declaration, conversation, or writing as are relevant to the part thereof previously given in evidence." (Assem. Com. 29B pt. 1A West's Ann. Evid. Code (2011 ed.) foll. § 356, p. 650; see *Witt v. Jackson* (1961) 57 Cal.2d 57, 67, 17 Cal. Rptr. 369, 366 P.2d 641 [the rule "'is necessarily subject to the qualification that the court may

13

exclude those portions of the conversation not relevant to the items thereof which have been introduced'"].)

"""'In applying . . . section 356 the courts do not draw narrow lines around the exact subject of inquiry.  'In the event a statement admitted in evidence constitutes part of a conversation or correspondence, the opponent is entitled to have placed in evidence all that was said or written by or to the declarant in the course of such conversation or correspondence, provided the other statements have *some bearing upon, or connection with*, the admission or declaration in evidence . . . .' [Citation.]"""  (*People v. Harris* (2005) 37 Cal.4th 310, 334–335, 33 Cal. Rptr. 3d 509, 118 P.3d 545.)

[Petitioner] contends the "I'm hungry" statement was admissible under section 356.  The People argue the statement was irrelevant and not necessary to explain the admitted portion of [Petitioner's] statement.  We conclude the People have the better of the argument and that the court did not err in ruling section 356 did not provide a basis for including the "I'm hungry" statement as evidence in this case.

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  (Pen. Code, § 211.)  "A defendant who does not use force or fear in the initial taking of the property may nonetheless be guilty of robbery if he uses force or fear to retain it or carry it away in the victim's presence."  (*People v. McKinnon* (2011) 52 Cal.4th 610, 686, 130 Cal. Rptr. 3d 590, 259 P.3d 1186.)

[Petitioner] argues this case is analogous to *Rosenberg v. Wittenborn* (1960) 178 Cal.App.2d 846, 3 Cal. Rptr. 459 (*Rosenberg*).

*Rosenberg* is inapposite.  In *Rosenberg*, the Court of Appeal reversed the trial court's grant of a new trial in a case involving a car accident. (*Id.* at p. 847.)  Plaintiffs elicited testimony from the responding police officer stating defendant said he was going about 30 miles an hour before impact, that he stepped on his brakes when the signal turned yellow, that he entered the intersection against the red light, and that he said this and nothing else.  (*Id.* at p. 851.)  Under the precursor to section 356, the defense cross-examined the officer, revealing defendant also stated he experienced a brake failure. (*Rosenberg*, at pp. 851–852.)  The trial court denied plaintiffs [*sic*] motion to strike the brake failure statement, but later granted plaintiff's motion for a new trial based on its admission.  (*Id.* at p. 850.)  The *Rosenberg* court determined the evidence was properly admitted:  "Considerations of fair play demanded that the portion of the conversation placed in evidence by plaintiffs be supplemented by the qualifying and enlightening portions of the conversation which gave it a very different complexion than that which the plaintiffs' segregated passages bore."  (*Id.* at p. 852.)

Here, by contrast, the omitted part of [Petitioner's] statement does nothing to qualify or enlighten the jury's understanding of [Petitioner's] previous statements.  Each of [Petitioner's] statements, "No bitch.  I don't have a receipt" and "I'm hungry," are easily understood without the other.  Omitting "I'm hungry" does nothing to mislead the jury.  Furthermore, the only disputed factual issue at trial was whether the force or fear element of Penal Code section 211 was satisfied.  The excluded statement was not relevant to demonstrate whether [Petitioner] used force or fear.  [Petitioner] fails to explain why a robber motivated by hunger would not use fear or

1    force.  And a contemporaneous assertion of hunger does not negate an

2    otherwise menacing statement.

3         The omitted statement had no relevance to prove the charged

4    crime.  Admitting the statement was unnecessary to give the jury a

5    fair picture of the interaction between [Petitioner] and Rodriguez and

6    it would not have impacted the jury's deliberations on [Petitioner's]

7    guilt.  We cannot say the trial court abused its discretion by excluding

8    the evidence as irrelevant.

9         Furthermore, even if we were to assume for purposes of

10   argument that the "I'm hungry" statement should have been admitted

11   pursuant to the rule of completeness, the trial court did not abuse its

12   discretion by excluding it under section 352.  Under that section, "the

13   trial court is accorded considerable discretion to carefully balance the

14   competing interests in admitting probative evidence and in excluding

15   evidence that unfairly prejudices a defendant, and an appellate court

16   will overturn the exercise of discretion only when the trial court's

17   assessment appears to exceed the bounds of reason."  (*People v.*

18   *Moore, supra*, 6 Cal.App.5th at p. 91.)

19        [Petitioner] contends the statement should not have been

20   excluded under section 352 because it had the dual purpose of

21   showing (1) he did not use force or fear in taking stolen items from

22   the grocery store and (2) impeaching Rodriguez's credibility as to the

23   assertion that [Petitioner] hit her hand when she attempted to retrieve

24   the stolen items.  The People argue the statement was properly

25   excluded under section 352 because it was irrelevant and prejudicial,

26   lacked probative value, and would only confuse and mislead the jury.

27        As discussed above, the "I'm hungry" statement offered no

28   particular insight as to whether force or fear was used in taking food

16

items from the store.  Indeed, we presume any person who robs
another does so out of a desire to possess the stolen items.  The
omitted statement was not pertinent to any element or defense of the
charged crime.  It was not exculpatory, as hunger is not a legitimate
necessity defense to the crimes of theft or robbery.  (*People v. Weber*
(1984) 162 Cal.App.3d Supp. 1, 5, 208 Cal. Rptr. 719.)  Furthermore,
a comment tending to show [Petitioner's] crime was motivated by
hunger does nothing to undercut the fear-inducing nature of a loud,
angry, and profanity-laced response immediately preceding a smack
to Rodriguez's hand.  Indeed, Rodriguez testified as to her fear of
being hurt in response to [Petitioner's] statements.

The statement also contained no value as to Rodriguez's
credibility.  [Petitioner] contends Rodriguez had a motive to lie about
his acts in order to bolster her credibility because she breached store
policy in following him out of the store.  We note that we do not
reweigh evidence or assess credibility on appeal.  (*People v.
McKissack* (1968) 259 Cal.App.2d 283, 287, 66 Cal. Rptr. 199.)  Our
only inquiry is whether the omitted statement was probative of
Rodriguez's credibility.  We determine it was not.  Rodriguez did not
make an inconsistent statement regarding [Petitioner's] statement.
She told officers at the scene [Petitioner] said, "No bitch. I don't have
a receipt.  I'm hungry."  At trial, her testimony omitted the "I'm
hungry" portion only after the trial court granted the People's motion
in limine to exclude it.  Including the full statement would not have
impeached Rodriguez's testimony or altered the perception of her
truthfulness.  The excluded statement also failed to contradict
Rodriguez's testimony that [Petitioner] smacked her hand or that she

1   was frightened by [Petitioner's] actions.  It lacked probative value as

2   to Rodriguez's credibility.

3         In contrast to its lack of probative value, the excluded statement

4   posed a substantial risk of prejudice to the People.  The trial court has

5   discretion to exclude evidence that evokes prejudice against either

6   party, including the People.  (*People v. Wright* (1985) 39 Cal.3d 576,

7   585, 217 Cal. Rptr. 212, 703 P.2d 1106.)  The court looks to whether

8   the proffered comment is the type of evidence "uniquely designed to

9   evoke an emotional or irrational response from jurors" which is

10   unrelated to a defendant's guilt or innocence.  (*People v. Jones* (2012)

11   54 Cal.4th 1, 62, 140 Cal. Rptr. 3d 383, 275 P.3d 496.)  Evidence is

12   properly excluded where it tends to "'evoke an emotional bias . . .

13   while having only slight probative value with regard to the issues.'"

14   (*People v. Robinson* (2005) 37 Cal.4th 592, 632, 36 Cal. Rptr. 3d 760,

15   124 P.3d 363.)

16         The "I'm hungry" statement could have evoked an emotional

17   response of sympathy toward [Petitioner's] situation that was not

18   relevant to his guilt or innocence.  Evoking such sympathy is not a

19   legitimate purpose for introducing evidence because the jury is not

20   permitted to use sympathy or emotional bias during the guilt phase of

21   trial.  (*People v. Sedillo* (2015) 235 Cal.App.4th 1037, 1064, 185 Cal.

22   Rptr. 3d 907 [defense photographs showing defendant with her child

23   properly excluded "because they tended to arouse sympathy for her as

24   a mother"].)

25   ///

26   ///

27   ///

28

Because the excluded statement lacked probative value and was prejudicial, the court did not err.  Since we determine the court did not err in excluding the "I'm hungry" statement, there was no due process violation.

*Mendoza*, 2018 Cal. App. Unpub. LEXIS 8408, at *4–12.  (LD 6 at 4–9.)

### 3.   Analysis

As an initial matter, to the extent Petitioner argues that the trial court abused its discretion or otherwise committed an error of state law, this claim is not cognizable on federal habeas review.  *See Estelle*, 502 U.S. at 67–68; *Rhoades*, 638 F.3d at 1034 n.5.

Next, Petitioner has not met his burden of showing that the exclusion of his "I'm hungry" statement violated his federal constitutional right to due process. This Court is bound by the California Court of Appeal's determination that the "I'm hungry" statement was inadmissible under California law.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *DePetris v. Kuykendall*, 239 F.3d 1057, 1061–62 (9th Cir. 2001) (California Court of Appeal's admissibility finding under state law was binding on federal habeas corpus). Because the statement was properly excluded under California evidentiary rules, Petitioner had no federal constitutional right to admit it.  *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.").

Accordingly, Petitioner is not entitled to federal habeas relief for his claim in Ground One.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.    Ground Two

In Ground Two, Petitioner raises a due process claim based on instructional error.  (Pet. 5, 15, 30–33.)  Specifically, Petitioner argues that the "trial court committed instructional error, in violation of [P]etitioner's federal constitutional rights, by adding a duplicative, confusing and argumentative additional 'force or fear' instruction to CALCRIM No. 1600 (second-degree robbery), in accordance with the People's request."  (*Id.* at 30.)

In the Answer, Respondent argues that the California Court of Appeal reasonably rejected this claim by determining that there was no instructional error, and alternatively, that any such error was harmless.  (Answer MP&A 18–22.)  Specifically, Respondent defends the Court of Appeal's reasoning that (1) there was no instructional error because the instruction was an accurate statement of the law and was not confusing or misleading, and (2) even if the instruction was repetitive or duplicative, any error was harmless because the instruction was unlikely to have made any difference in the jury's verdict in light of the overall charge, the parties' arguments, and the evidence presented at trial.  (*Id.*)

### 1.    Legal Standard

"[I]nstructions that contain errors of state law may not form the basis for federal habeas relief."  *Gilmore v. Taylor*, 508 U.S. 333, 342 (1993); *accord Estelle*, 502 U.S. at 71–72 ("[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."); *Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005) ("Any error in the state court's determination of whether state law allowed for an instruction in this case cannot form the basis for federal habeas relief.").  On federal habeas review, the only cognizable issue is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *accord Waddington v. Sarausad*, 555 U.S. 179, 191 (2009).

An instruction that does not render a petitioner's trial fundamentally unfair does not violate due process.  *See Karis v. Calderon*, 283 F.3d 1117, 1132 (9th Cir. 2002); *see also Middleton v. McNeil*, 541 U.S. 433, 437 (2004) ("[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.").  The court must evaluate the alleged instructional error in light of the overall charge to the jury.  *See Middleton*, 541 U.S. at 437 ("If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." (internal quotation marks and citation omitted)).  The relevant question is not whether a jury "*could have*" applied the challenged instruction in an unconstitutional manner, but rather "whether there is a reasonable likelihood it *did*." *Rhoades*, 638 F.3d at 1042 (italics in original); *see also Weeks v. Angelone*, 528 U.S. 225, 236 (2000) (declining to grant habeas relief where the petitioner had shown only a "slight *possibility*" that the jury misapplied an instruction).  Courts should not engage in a "technical parsing" of the challenged instruction, but instead should consider the instruction as the jury would, "with a commonsense understanding of the instructions in the light of all that has taken place at trial." *Rhoades*, 638 F.3d at 1042–43 (quoting *Johnson v. Texas*, 509 U.S. 350, 368 (1993)).

2.    Background

The trial court provided three jury instructions on the "force or fear" element of second-degree robbery.  (CT 168–69; 3 RT 293–94.)  Petitioner did not object to the first two instructions.  The first instruction consisted of language from CALCRIM No. 1600 defining the elements of robbery.  In relevant part, the instruction stated:  "The defendant used force or fear to take the property or to prevent the person from resisting[.]"  (CT 168; 3 RT 293.)  The second instruction

21

1   stated:  "The application of force or fear may be used when taking the property or

2   when carrying it away."  (CT 169; 3 RT 294.)

3          The third instruction, which the prosecution requested and to which

4   Petitioner objected, stated:  "A robbery occurs when the defendant uses force or

5   fear in resisting attempts by the owner to regain property that was improperly taken

6   or in attempting to remove that property from the owner's immediate presence."

7   (CT 169; 3 RT 294.)  Petitioner's counsel, Ms. Giller, argued that this third

8   instruction was duplicative and also violated Petitioner's due process rights because

9   it was distracting and confusing.  (2 RT 165–76 (Sept. 14, 2017 Tr.).)  When the

10  trial court asked Ms. Giller to explain why the instruction was confusing, she

11  responded:  "Again, I think it's—I think it would confuse the jury because—

12  realistically, actually, not even that it's confusing.  I do think that in some—to some

13  respect, it is bolstering facts and theories kind of for the People's position."  (*Id.* at

14  176.)  The prosecutor, Mr. Wooldridge, argued that the proposed instruction was an

15  accurate statement of the law and was helpful in clarifying the law as applied to this

16  specific type of robbery, noting that it included language drawn directly from

17  appellate cases.  (*Id.* at 165–66, 167.)  The trial court provided the instruction over

18  Petitioner's objection.  (CT 169; 3 RT 294.)

19         On appeal, Petitioner argued that the trial court's instruction was erroneous

20  and that this error implicated his constitutional rights to due process and a fair trial.

21  (LD 3 at 30–36.)  The Court of Appeal rejected this claim, reasoning as follows:

22              [Petitioner] argues the court committed reversible error by

23         giving the People's requested pinpoint instruction based on *People v.*

24         *Estes* (1983) 147 Cal.App.3d 23, 194 Cal. Rptr. 909 (*Estes*), and its

25         progeny.  He concedes the instruction was a correct statement of law,

26         but contends the instruction was "duplicative, confusing, and

27         argumentative."  We disagree.

28

1        We review a claim of instructional error de novo.  (*People v.*

2    *Shaw* (2002) 97 Cal.App.4th 833, 838, 118 Cal. Rptr. 2d 678.)

3    "Review of the adequacy of instructions is based on whether the trial

4    court 'fully and fairly instructed on the applicable law.'"  (*People v.*

5    *Ramos* (2008) 163 Cal.App.4th 1082, 1088, 78 Cal. Rptr. 3d 186.)

6    "[T]he correctness of jury instructions is to be determined from the

7    entire charge of the court, not from a consideration of parts of an

8    instruction or from a particular instruction."  (*People v. Burgener*

9    (1986) 41 Cal.3d 505, 538, 224 Cal. Rptr. 112, 714 P.2d 1251,

10   disapproved on other grounds in *People v. Reyes* (1998) 19 Cal.4th

11   743, 756, 80 Cal. Rptr. 2d 734, 968 P.2d 445.)  Where reasonably

12   possible, we interpret the instructions to support the judgment rather

13   than defeat it.  (*Ramos*, at p. 1088.)

14       The trial court instructed the jury with CALCRIM No. 1600,

15   which provides, in pertinent part:  "The defendant used force or fear

16   to take property or to prevent the person for resisting."  The court

17   added a second instruction, without objection:  "The application of

18   force or fear may be used when taking the property or when carrying

19   it away."  It also gave the following instruction, over [Petitioner's]

20   objection:  "A robbery occurs when the defendant uses force or fear in

21   resisting attempts by the owner to regain property that was improperly

22   taken or in attempting to remove that property from the owner's

23   immediate presence."

24       The contested instruction is an accurate statement of the law

25   regarding an *Estes* robbery.  It was not confusing.  It stated a legal

26   principle as to an element of robbery in simple language.  Even if the

27   instruction was somewhat repetitive or duplicative, [Petitioner] fails to

28   demonstrate a trial court commits reversible error simply by giving a

1   redundant instruction which is otherwise clear, impartial, and

2   accurate.

3          But even assuming arguendo that the duplicative instruction

4   was given in error, we discern no prejudice.  Where a trial court gives

5   a legally correct, but extraneous, instruction, the error "'is usually

6   harmless, having little or no effect "other than to add to the bulk of the

7   charge."'"  (*People v. Lee* (1990) 219 Cal.App.3d 829, 841, 268 Cal.

8   Rptr. 595; see *People v. Henriquez* (2017) 4 Cal.5th 1, 34, 226 Cal.

9   Rptr. 3d 69, 406 P.3d 748.)  We review such an error under the

10  reasonable probability standard, that is, whether it is

11  reasonably probable defendant would have achieved a more favorable

12  result in the absence of the error.  (*People v. Guiton* (1993) 4 Cal.4th

13  1116, 1130, 17 Cal. Rptr. 2d 365, 847 P.2d 45.)  "We have made clear

14  that a 'probability' in this context does not mean more likely than not,

15  but merely a *reasonable chance*, more than an *abstract possibility*."

16  (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715, 34

17  Cal. Rptr. 2d 898, 882 P.2d 894.)  "In determining whether there was

18  prejudice, the entire record should be examined, including the facts

19  and the instructions, the arguments of counsel, any communications

20  from the jury during deliberations, and the entire verdict."  (*Guiton*, at

21  p. 1130.)

22         [Petitioner] contends the alleged instructional error was

23  prejudicial and that but for the improper instruction it was reasonably

24  probable he would have achieved a more favorable result.  We

25  disagree.  It was undisputed [Petitioner] walked into a grocery store

26  and stole several items, in the presence of store employees, with the

27  intent to permanently deprive the owner of the property.  As to the

28  disputed force or fear element of Penal Code section 211, testimony

from Rodriguez, corroborated by consistent statements to the 911

operator and the police who interviewed her, established [Petitioner]

smacked her hand when she attempted to retake the stolen property.

Rodriguez also testified as to [Petitioner's] angry tone and that she

was fearful of him. Thus, even presuming the contested instruction

was improper, there was no reasonable probability that its omission

would have undermined the People's case against [Petitioner] as to

count 1.  In light of the parties' arguments, and the evidence produced

at trial, the contested instruction was unlikely to have made a

difference to the jury's analysis.  We think it's clear under any

standard that no better result for [Petitioner] would have resulted had

the pinpoint instruction been omitted.[fn]

> [fn] Because we determine the trial court did not err,
> we reject [Petitioner's] argument that cumulative
> error requires reversal. We similarly reject
> [Petitioner's] due process and constitutional claims
> stemming from the perceived instructional error.

*Mendoza*, 2018 Cal. App. Unpub. LEXIS 8408, at *12–15.  (LD 6 at 9–11.)


      3.    Analysis

     Petitioner does not argue that the challenged instruction misapplied or

misstated the elements of robbery under state law.  (*See* Pet. 31.)  Indeed, this Court

cannot reexamine the California Court of Appeal's determination that the

instruction accurately stated the relevant California law.  *See Waddington*, 555 U.S.

at 192 n.5 (stating that, where a state court holds that an instruction correctly

articulates state law, "it is not the province of a federal habeas court to reexamine

state-court determinations on state-law questions" (quoting *Estelle*, 502 U.S. at 67–

68)); *Bradshaw*, 546 U.S. at 76.

1    Instead, Petitioner argues that the instruction is duplicative and confusing

2    because it restates the "force or fear" instruction that the trial court had already

3    provided. (Pet. 31–32.) However, as Respondent points out (Answer MP&A 19),

4    the challenged instruction was more detailed and was tailored specifically to the

5    type of robbery that was charged in Petitioner's case—where the prosecution

6    alleged that Petitioner used force or intimidation in resisting when a store employee

7    attempted to recover the stolen items—whereas the initial "force or fear" instruction

8    was more general. (*See* 3 RT 294.) And even if this instruction was somewhat

9    duplicative or repetitive, the Court of Appeal reasonably determined that Petitioner

10   did not establish an instructional error, let alone a due process violation, because he

11   "fail[ed] to demonstrate a trial court commits reversible error simply by giving a

12   redundant instruction which is otherwise clear, impartial, and accurate." *Mendoza*,

13   2018 Cal. App. Unpub. LEXIS 8408, at *13. (LD 6 at 10.)

14   Moreover, to merit federal habeas relief, Petitioner must show that the

15   alleged constitutional error had a "substantial and injurious effect or influence in

16   determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)

17   (citation and quotation marks omitted). "Under this test, relief is proper only if the

18   federal court has grave doubt about whether a trial error of federal law" had such a

19   prejudicial effect. *Davis v. Ayala*, 576 U.S. 257, 267–68 (2015) (internal quotation

20   marks and citation omitted). Petitioner has not met that standard in this case.

21   Both the challenged instruction and the overall charge clearly and correctly

22   stated the "force or fear" element of second-degree robbery. (*See* 2 RT 294.)

23   Petitioner does not point to any jury requests to re-read or clarify the "force or fear"

24   instructions, or any other record evidence that the jury had difficulty understanding

25   and applying these instructions. (*See* Pet.) Petitioner did contest the "force or fear"

26   element at trial and now asserts, without elaboration, that the prosecution's

27   evidence on this issue was "weak" or "shaky." (*Id.* at 33.) However, the trial

28   record does not support that contention. Ms. Rodriguez testified that Petitioner

26

"smacked" her hand when she attempted to take back the stolen items and that the menacing tone of Petitioner's statements and behavior made her afraid that Petitioner would harm her.  (*See* 2 RT 69–72, 103 (Sept. 13, 2017 Tr.).)  She made the same statements to the 911 dispatcher as well as Officer Nick Bennallack, the police officer who interviewed her at the scene.  (*See id.* at 76–77, 107–08, 114; CT 192–93 (911 Tr.).)  Petitioner has not separately challenged the sufficiency of the evidence and does not point to any specific weaknesses in the prosecution's evidence on this issue.  In sum, there is no showing that the trial court's use of a duplicative jury instruction on the force or fear element had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

Accordingly, Petitioner is not entitled to federal habeas relief for his claim in Ground Two.

## VI.     CONCLUSION

IT THEREFORE IS ORDERED that the Petition is denied and that judgment shall be entered dismissing this action with prejudice.

DATED:  January 29, 2021

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE